## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THE CINCINNATI INSURANCE COMPANY**, an Ohio corporation,

    **Plaintiff,**

v                                                              **CIVIL ACTION NO.: 2:20-CV-12 (Kleeh)**

**PREMIER CONSTRUCTION SERVICES LLC and ROBERT RIFFLE,**

    **Defendants.**

ELECTRONICALLY FILED
Apr 16 2020
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT
## FOR DECLARATORY RELIEF

COMES NOW The Cincinnati Insurance Company, Plaintiff ("Cincinnati"), and for its request for Declaratory Relief, states as follows:

1.    This action is instituted pursuant to the provisions of 28 U.S. Code § 2201.

2.    Cincinnati is an Ohio corporation with its principal place of business located in the State of Ohio and is licensed to do business in the State of West Virginia.

3.    Premier Construction Services LLC, Defendant ("Premier"), is a West Virginia corporation with its principal place of business located in the State of West Virginia.

4.    Robert Riffle, Defendant ("Riffle"), is a citizen and resident of the State of West Virginia.

5.    This Honorable Court has jurisdiction of this civil action and Complaint for Declaratory Relief in that there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. 28 U.S. Code § 1332.

6. On or about February 20, 2020, Daniel Dawson and Marjorie Dawson ("Dawson") filed a Complaint ("Complaint") in the Circuit Court of Upshur, County, West Virginia against Premier and Riffle ("Defendants"). A copy of the Complaint is attached hereto as Exhibit A.

7. Defendants have tendered a request to Cincinnati for coverage and a defense to the Complaint of Dawson.

8. Complaint alleged that Dawson contracted with Defendant Premier to construct a residential house at 157 Remington Lane, Buckhannon, Upshur County, West Virginia (paragraph 6 of Complaint).

9. Complaint further alleged that defendant Riffle personally performed construction work on the subject property (paragraph 7 of Complaint).

10. Complaint further alleged that at all times complained of, Defendants Premier and Riffle were acting for and on behalf of themselves and on behalf of each other as agents, servants, and/or employees for the purpose of contracting to build and/or remodel new, single and multiple family residential housing wherein both Defendants would profit (paragraph 8 of Complaint).

11. Complaint further alleged that on or about February 2018 Dawson and Defendants Premier and Riffle entered into an agreement entitled Construction Contract in which Dawson agreed to pay approximately Three Hundred Eleven Thousand Dollars ($311,000.00) for the subject house to be built with special accommodations and standards set forth by the United States Veterans Administration, which issued the loan for the subject house (paragraph 13 of Complaint).

12. Complaint further alleged that it was agreed that construction would be substantially complete in December of 2018 (paragraph 14 of Complaint).

13. Complaint further alleged that on or about August of 2018 Defendants Premier and Riffle stopped coming to the construction site and abandoned the project with the house only

partially constructed, improperly constructed and negligently constructed (paragraph 15 of Complaint).

14. Complaint further alleged that Defendants Premier and Riffle committed a breach of contract in their stoppage of work (paragraph 16 of Complaint).

15. Complaint further alleged that Defendants Premier and Riffle had no discernable cause, reason or justification for the abandonment of the project prior to completion, and further alleged that such abandonment proximately caused damages to Dawson (paragraph 17 of Complaint).

16. Complaint further alleged that the breach of contract by Defendants Premier and Riffle delayed Dawson's occupation of new home and caused delay in selling a prior home with further damages to Dawson (paragraph 18 of Complaint).

17. Complaint further alleged that Defendants Premier and Riffle failed to meet their obligations and failed to follow plans for the construction of the house resulting in costs to Dawson (paragraph 19 of Complaint).

18. Complaint further alleged that Defendants Premier and Riffle, jointly and/or severally, partially built the house in question negligently and failed to meet construction standards, building codes and standards required by the United States Veterans Administration (paragraph 22 of Complaint).

19. Complaint further alleged that Defendants Premier and Riffle's negligence and poor workmanship increased the construction costs for Dawson (paragraph 23 of Complaint).

20. Complaint further alleged that as a proximate result of Defendants Premier and Riffle, jointly and/or severally, in their negligent and intentional acts and omissions Dawson was injured and damaged, including claims that the work of Defendants was incomplete and defective,

that Dawson suffered financial loss, that Dawson suffered severe emotional distress, that Dawson suffered financial stress, that Dawson lost the enjoyment of the house, that Dawson incurred additional debt, and that Dawson suffered annoyance and inconvenience (paragraph 27 of Complaint).

21. Complaint further alleged that the actions and conduct of Defendants Premier and Riffle were intentional, reckless, willful, wanton and in reckless disregard of Dawson's rights and property such that entitles Dawson to punitive damages (paragraph 28 of Complaint).

22. Complaint further alleged that Defendants Premier and Riffle had breached their contract with Dawson (paragraph 29 of Complaint).

23. Complaint demanded judgment against Defendants Premier and Riffle for compensatory damages; incidental damages; damages for annoyance and inconvenience, personal injury, loss of use, and expenses in finding and buying alternative components for the home; pre-judgment interest; post-judgment interest; punitive damages; costs, expenses and attorney fees (paragraph 30 of Complaint).

24. Cincinnati issued a Commercial General Liability insurance policy to Premier, policy number ENP 036 54 85, effective December 14, 2016 to December 14, 2019. Included as part of said policy was an Excess Liability Coverage Form, with an effective date of May 8, 2017. A certified copy of the Cincinnati policy is attached as Exhibit B.

25. In response to Defendants' request and tender to Cincinnati, Cincinnati is providing Defendants with a defense to the Complaint of Dawson, pursuant to a Reservation of Rights.

26. The Cincinnati policy issued to Premier provides bodily injury and property damage liability coverage in accordance with Section I of the policy. The Cincinnati policy includes the following insuring provisions:

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I – COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I – COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

      No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    c. "Bodily injury" or "property damage" which:

        (1) Occurs during the "coverage term"; and

        (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

        Includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

    d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative";

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury' or "property damage";

        (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

        (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

        (5) Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

    e. Damages because of "bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury".

    27.    "Occurrence" and "property damage" are defined by the Cincinnati policy as follows:

### SECTION V – DEFINITIONS

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

28. The Complaint of Dawson made no allegation that any of the claimed damages of Dawson resulted from an "occurrence" as defined in the Cincinnati Policy. The Complaint of Dawson alleged that the actions of Defendants were "intentional, reckless, willful, wanton and in reckless disregard of the plaintiff's rights and property" (paragraph 28 of Complaint).

29. The Complaint of Dawson made no allegations of any "property damage" as defined in said policy. There is no allegation in the Complaint of physical injury to tangible property resulting from an "occurrence" or for loss of use of tangible property that is not physically injured as a result of an "occurrence."

30. Policy exclusions are set forth in the Cincinnati policy with allegations for breach of contract, breach of warranty, and damage to the work of the insured being excluded include as follows:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. **Contractual Liability**

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1) That the insured would have in the absence of the contract or agreement; or

        (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damages" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury' or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

    j. **Damage to Property**

        "Property damage" to:

        (1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

        (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

        (3) Property loaned to you;

        (4) Personal property in the care, custody or control of an insured;

        (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

        (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    l. **Damage to Your Work**

Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

31. The Excess Liability Coverage Form included the following provisions:

**SECTION I – COVERAGE**

**A. Insuring Agreement**

    **5.** The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" are made a part of this Coverage Part, except for:

        **a.** Any term or condition relating to:

            **(1)** Any duty to investigate or defend;
            **(2)** The limits of insurance;
            **(3)** The payment of expenses;
            **(4)** The premium;
            **(5)** Cancellation or non-renewal;
            **(6)** Any renewal agreement;
            **(7)** The policy period; or

        **b.** Any other provision that is not consistent with this Coverage Part;

>In which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.
>
>**6.** The amount we will pay is limited as described in **SECTION II – LIMITS OF INSURANCE.**
>
>No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I – COVERAGE; C. Defense and Supplementary Payments.**

32. There is no coverage under the Cincinnati policy, as set forth in the Commercial General Liability Policy and the Excess Liability Coverage Form, for any of the damages alleged by Dawson in the Complaint.

33. Cincinnati seeks a declaratory judgment that it has no duty to provide any coverage or defense to Defendants Premier and Riffle with regard to the civil action filed by Dawson and the allegations in the Complaint of Dawson.

WHEREFORE, Cincinnati respectfully requests the following relief:

(1) A Declaration of no coverage for Defendants Premier Construction Services LLC and Robert Riffle with regard to the claims and damages alleged in the Complaint of Dawson;

(2) A Declaration that Cincinnati owes no duty to defend or provide coverage for Defendants Premier Construction Services LLC and Robert Riffle with regard to the claims and damages alleged in the Complaint of Dawson;

(3) That Cincinnati be awarded its attorney's fees and costs in prosecuting this action; and

(4) That Cincinnati be awarded any and all other further relief as this Court deems just and proper.

THE CINCINNATI INSURANCE COMPANY
By counsel

    /s/Randall L. Trautwein
Randall L. Trautwein, Esquire, WVSB #3791
Jill E. Lansden, Esquire, WVSB #12769
Lamp Bartram Levy Trautwein & Perry, PLLC
720 Fourth Avenue
P. O. Box 2488
Huntington, WV  25725
(304) 523-5400
*The Cincinnati Insurance Company*

F:\#\8698\P\Complaint.docx